**Peter F. Lacny**
DATSOPOULOS, MacDONALD & LIND, P.C.
Central Square Building
201 West Main Street, Suite 201
Missoula, Montana 59802
Telephone: (406) 728-0810
Facsimile:  (406) 543-0134
Email:      placny@dmllaw.com; agardnerknox@dmllaw.com


Attorneys for Defendant Nathan Nephi Zito


# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                Plaintiff,<br><br>  v.<br><br>NATHAN NEPHI ZITO,<br><br>                                Defendant. | Cause No.:  CR 22-113-BLG-SPW<br><br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |


NATHAN NEPHI ZITO, by and through counsel, submits this

sentencing memorandum in advance of his February 24, 2023 sentencing

hearing.

## <u>INTRODUCTION</u>

Nathan Zito will be sentenced on his plea bargain conviction for an antitrust offense on February 24, 2023. With no criminal history and a total offense level of 10, the PSR has correctly calculated his advisory guideline range at 6-12 months. PSR, ¶ 54. Both statute and the advisory guidelines allow probation. PSR, ¶¶ 58-60. Because he is a first-time non-violent offender, in Zone B of the sentencing table, the guidelines encourage the Court "to consider a sentence other than imprisonment." Application Note 4, *USSG 5C1.1.*

The parties have agreed to a $27,000.00 fine that Nathan will pay the day of his sentencing hearing. Plea Agreement, ¶ 3; PSR, ¶ 55. There is no restitution. There are no objections to the PSR by the parties.

As discussed below, a sentence of probation is sufficient to meet the statutory purposes of sentencing outlined in 18 U.S.C. § 3553(a).

//

//

## SENTENCING RECOMMENDATION

**I.      Probation is an appropriate sentence for Nathan Zito.**

The relevant factors of 18 U.S.C. 3553(a) are examined below. Collectively, the 3553(a) factors support a probationary sentence for Nathan.

### A. The nature and circumstances of the offense.

Nathan does not minimize the seriousness of the offense conduct, which is described in the PSR.  As indicated in his letter to the Court, he understands the harm his behavior can have on society and is remorseful for it. PSR, ¶ 17.  Nathan voluntarily cooperated with the Government in its investigation and quickly accepted responsibility for his conduct by agreeing to a pre-indictment resolution, saving resources and recognizing his own culpability.

This offense was Nathan's first encounter with the criminal justice system, and it certainly will be his last. As discussed below, Nathan's personal history and characteristics indicate that this offense was a complete aberration, and that Nathan is highly unlikely to reoffend.

## B. Nathan's admirable personal history and characteristics warrant a community-based sentence.

Nathan has no criminal history and has lived his life the right way. He is a dedicated husband and father, is a generous and thoughtful business owner, and a citizen who has consistently volunteered his time to give back to his community to make it a better place.

Nathan was born in Hamilton, Montana and is 44 years old. Nathan and Amber have been married for fifteen years and have five children. PSR, ¶ 40. Amber describes Nathan as a "phenomenal father" who has an "amazing bond" with their children. PSR, ¶ 41.

Nathan grew up in Corvallis, Montana. Nathan's father, a Vietnam Veteran, worked for the post office, while his mother cared for  Nathan and his six siblings full time. PSR, ¶ 38. Growing up, Nathan's family struggled financially, and Nathan "learned the value of hard work" from an early age. (April Dennis Character Letter.[1]) Nathan began working when he was still in middle school, changing sprinkler pipes for his neighbors – a laborious task "that had to done twice a day all summer

---

[1] All letters cited in this Memorandum have been filed separately with the Court. See *Defendant's Notice of Filing of Sentencing Letters*. Counsel received 62 letters of support for Nathan. A sample of 25 of the letters have been filed with the Court.

long." (John and Laura Lee Zito Character Letter.) During his teen years, Nathan honed the lifelong hard work ethic that came to define him. Nathan became an Eagle Scout at fifteen, all while balancing a tough job at an asphalt company in the summers and attending high school full time. *Id.*

After graduating from high school, Nathan briefly attended college to study business.  However, soon after starting, he felt that he had gained the knowledge to start his own asphalt sealing business through the on-the-job training he received during his high school summer job.

Nathan launched Z & Z Asphalt in 1997 with money that he had saved through high school, and a $10,000.00 loan co-signed by his parents. PSR, ¶ 17. After starting Z & Z,  Nathan worked "long, hard hours, did great work, and with the referrals from his customers" his business flourished. (John and Laura Lee Zito Character Letter.) As described by his long-time friend Mark Beddes, "twenty years ago, Nathan was just a simple guy that attempted to start a business with little to no formal education. He utilized his honesty and ability to work with people to do things he had no business doing." (Mark Beddes Character Letter).

Over the next years, Nathan grew Z&Z Asphalt to "one of the largest maintenance contractors in a 6-state area." (See, **Exhibit A** *Cliffside Neighbors* article on the Zito family.) As his business grew, Nathan created a company culture where employees with dignity and respect. He worked hard to maintain a "tremendous investment in the lives of [his] employees," work-related or otherwise. (Michael Hill Character Letter.) As an example, "when one of his workers became urgently in need of health care, Nathan provided financial assistance so that the employee could receive emergency surgery he desperately needed but could not afford." (Donald and Lisa Wilcox Character Letter.) Nathan saw himself as a mentor to his employees. As one former employee put it, Nate "inspired [him] on many occasions to set my sights higher and develop [himself] in areas [he] was failing." (Christian Williams Character Letter.)

Although passionate about his business and work, Nathan's true purpose in life has been and always will be his family. When Nathan and Amber married, Amber had a son (Aden) from a previous relationship. Nathan immediately stepped into the role as Aden's sole father figure, "[extending] his heart and soul to the benefit and wellbeing of [Aden],"

and their relationship remains "indescribable." (Amber Zito Character Letter.)

Aden describes Nathan as his "biggest role model" and "one of the most influential people in his life." (Aden Winder Character Letter.) Aden, now 18, plans to dedicate his life to being a teacher and a coach to inspire young people, a goal Nathan instilled in him through "love, sacrifice, and guidance." (Amber Zito Character Letter.)

All five of Nathan's children "adore him in every sense of the word," and Nathan is a dedicated an involved father. Whether it be "cheering at Aden's football games and wrestling matches, to standing on the sidelines while Heather runs track, to helping Aubrey with her hedgehog Oliver, to taking Summer on a daddy-daughter date to see Luke Combs in concert, to sponsoring and coaching Garrett's local soccer team, Nathan is there, actively engaged, and championing his children." (Matthew and Sara Zabawa Character Letter.) Nathan and Amber have "cultivated a family that loves to work together, play together, and tease each other." (*Id.*)

Throughout his life, Nathan has made it a priority to give back to his community and take care of others. Nathan saw his business as a

"method to invest back into people in the area." *See* **Exhibit A.** Amber, the person who knows him better than anyone, chose "generosity" to describe Nathan in one word. (Amber Zito Character Letter.)

As his business thrived, Nathan realized that many people "rarely get the leadership training we need until [they] are adults." *See* **Exhibit A.** Seeing this need in the community, Nathan created "Renegades 4 Christ," or "R4C," "a fitness-based youth mentorship program designed to help inspire, grow, and train young people" throughout the Billings community. *Id.* The program challenged young people to "become the best version of themselves" through connection with others that pushed them to "live a disciplined and more purposeful life." (Leonard Zito Character Letter.) Nate has impacted hundreds of kids through this program and has "led discussions with our community's youth that have left an everlasting positive impact on their lives." (Justen Shaw Character Letter.) Nathan's work with R4C even inspired his brother, Leonard, to start a similar fitness-based mentorship program in Arizona. (Leonard Zito Character Letter.)

Nathan took interest in teaching some of the lessons taught in R4C and translating them into lessons that could be taught in local schools.

He arranged meetings with the Elder Grove Elementary School Principal, Jesse Moore, where the two "came up with a plan where students helped take ownership of their school." (Jesse Moore Character Letter.) Inspired by his meeting at the school, Nathan ran for and won a seat on the school board. There, Nathan "built strong relationships with the other members of the board" and "found opportunities to serve [the school district] and never asked for recognition from anyone." (Jesse Moore Character Letter.) As a board member,  Nathan never failed to "put kids first in all of his discussions," and "did whatever he could to support [the] administration, school board, staff, and community." (Jesse Moore Character Letter.)

Nathan's selflessness and desire to give back has manifested itself in other notable ways. Nathan coaches his daughter's soccer team, participates in community-based faith support groups, and even organized a group of friends to donate blood every two months. (Michael Hill Character Letter.) Simply put, Nathan is "the kind of person that would give the shirt off of his back to his worst enemy." (Mark Beddes Character Letter.)

Nathan enjoys tremendous support in the community, even in light of his offense. Those people who know him best know that this behavior was completely out of character, and that nothing like it will happen again. Nathan's family, his neighbors, his friends, his friends' parents, his in-laws, his employees, his bankers, and even his insurance agents have written letters on his behalf.   In the over 60 character letters submitted to counsel on his behalf, it is clear that the community as a whole feels that Billings is "a better, safer, and more enjoyable place with Nate in it." (Brian Barrett Character Letter.)

Nathan takes full responsibility for his actions and recognizes the harm he caused by not living up to the principles he expects of himself. The repercussions of his offense will follow him for the rest of his life. As Amber puts it, "he has suffered a loss of his confidence, livelihood, and at times this has completely overwhelmed him." (Amber Zito Letter.) The "sorrow that Nathan feels for this is immeasurable and it is just a drop in the bucket in comparison to the outcome this decision will have on the many lives that Nathan has impacted and will continue to impact." (Mark Beddes Character Letter.)

## C. The kinds of sentences available to the Court.

In some instances, probation instead of prison better promotes respect for the law. "A sentence of imprisonment may work to promote not respect, but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall vs. United States,* 552 U.S. 38, 54 (2007). (quoting district court opinion).

The Supreme Court noted in *Gall* that "[p]robation is not granted out of a spirit of leniency," and, "probation is not merely 'letting an offender off easily,'" 552 U.S. at 49 n.4 (citing Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957)). The Supreme Court also stated "'the probation or parole conditions imposed on an individual can have a significant impact on both that person and society . . . .  Often these conditions comprehensively regulate significant facets of their day-to-day lives . . . .  They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist.'" *Id*. at 48-49 (citing 1 N. Cohen, *The Law of Probation and Parole* § 7:9 (2d ed. 1999) (brackets omitted)).

Nate will face significant personal impacts from a probationary sentence, including strict supervision and constraints on his freedom. He will face scrutiny of his financial and business affairs, and be subject to routine searches of his person, home and vehicles. His ability to freely travel and live life as a regular citizen will be curtailed. He can no longer vote or sit on a jury.  He will have to frequently check in with his probation officer and comply with all requests.  A probationary sentence is not "letting Nate off easy." It is the proper sentence in this case and under these circumstances.

### D. The need to avoid sentencing disparities.

While antitrust convictions are rare in this district, sentences imposed on other Montana defendants convicted of federal financial crimes in the Billings division show that sentencing Nathan to probation would not be disparate with other offenders.

Tanya Smith (CR 20-81-BLG-SPW) was convicted of Theft of Government Property in a Social Security Fraud case that involved a loss amount of $325,000.00. Ms. Smith's guideline range was 18-24 months. She was sentenced to three years of probation.

Zach Ruble (CR 19-60-BLG-DLC) was convicted of conspiracy to commit wire fraud. With a 1.5 million-dollar loss amount, Mr. Ruble's guideline range was 33-41 months. Mr. Ruble was sentenced to probation for two years.

Meredith McConnell (CR 19-90-BLG-SPW) was convicted at trial of Theft from Federally Funded Program, Wire Fraud and False Statements. Ms. McConnell's sentencing guideline range was 12-18 months.  Ms. McConnell was sentenced to four years of probation.

Nathan faces a guideline range of 6-12 months, lower than all of the cases above where probation was imposed. A probationary sentence here would not result in disparate treatment of similarly situated individuals, especially considering that in each of the cases above, there were identifiable victims who suffered pecuniary loss.

//


//

### E. The sentencing guidelines encourage the Court to impose a sentence other than incarceration.

Nathan's advisory guideline range is in Zone B of the Sentencing Table, which allows probation under the guidelines. PSR, ¶ 60. A 2018 application note to USSG 5C1.1 directs that "If the defendant is a nonviolent first offender and the applicable guideline range is in Zone A or B of the Sentencing Table, the court should consider imposing a sentence other than a sentence of imprisonment[.]" *USSG 5C1.1,* Application Note 4.

This recent application note was motivated by a 2017 "recidivism study which showed that (i) defendants with zero criminal history points have a lower recidivism rate than those defendants with even one criminal history point and (ii) those defendants with zero criminal history points *and* no prior contact with the criminal justice system have an even lower recidivism rate." T. Hutchison, *et al., Federal Sentencing Law and Practice,* 1358-1359, (2022 Edition).

Nathan fits squarely within this guideline directive. He has zero criminal history points and has had no prior contact with the criminal justice system; that is, no juvenile adjudications, no convictions, no other criminal conduct, no pending charges, and no arrests. A probationary

sentence is authorized and encouraged by the sentencing guidelines under these circumstances, especially considering that despite never interacting with the criminal justice system, Nathan promptly accepted responsibility and reached a pre-indictment resolution with the Government, which is reflective both of his character and his intention to never find himself in this position again in any court.

### F. A prison sentence is greater than necessary to promote respect for the law, to punish and deter, and to protect the public.

A guideline prison sentence is not necessary here to promote respect for the law. As discussed above, a probationary sentence in this case promotes respect for the law because such a sentence recognizes the totally law-abiding manner that Nathan has lived his life, and accounts for his admirable personal history and characteristics discussed above.

Further, Nathan has already suffered significant punishment because of his offense. After spending the better part of his life building his business, Nathan recognized that the nature of the charges here made his association with Z & Z untenable. Last year, Nathan voluntarily disassociated from the company he dedicated his life to building and entered into voluntary exclusions with the State of Montana and the U.S.

Department of Transportation, which bar him from participating in any publicly funded highway projects for years.  As a result, this conviction has ended the only career Nathan has ever known and caused him significant personal and professional humiliation.

The government will likely contend that a guideline prison sentence is necessary to generally deter others. Nathan contends that the very public nature of this prosecution, the loss of his career and business, and being permanently branded a felon will serve to generally deter others. Finally, it is undisputed that Nathan is not a dangerous person or repeat offender, meaning that prison is not necessary to protect the public.

## **CONCLUSION**

Nathan is a first-time non-violent offender. He has accepted responsibility for his offense and poses no risk to the community. Nathan is eligible for probation, and the guidelines encourage the court to consider a sentence other than imprisonment for him. Nathan has been severely punished by this conviction alone—he has lost his business, his career, and had his good reputation permanently tarnished. Prison is not necessary to protect the public, or to deter Nathan or others. A

community-based sentence would adequately further the statutory purposes of sentencing. Nathan asks that this Court sentence him to probation with appropriate conditions.

DATED this 10th day of February, 2023.

DATSOPOULOS, MacDONALD & LIND, P.C.

By:  /s/ *Peter F. Lacny*
　　　Peter F. Lacny
　　　Attorney for Nathan Nephi Zito

## <u>CERTIFICATE OF SERVICE</u>
### L.R. 5.2(b)

I, Peter F. Lacny, attorney for Defendant, hereby certifies that a copy of the Defendant's Sentencing Memorandum was served on these persons by the following means:

 1, 2  CM/ECF
_____Hand Delivery
_____Mail
_____Overnight Delivery Service
_____Fax
 3,4  Email

1.      Clerk, U.S. District Court;

2.      Bryan Dake and Jeremy Goldstein, U.S. Attorney's Office;

3.      U.S. Probation Office;

4.      Nathan Nephi Zito.

DATED this 10th day of February, 2023.

DATSOPOULOS, MacDONALD & LIND, P.C.

By:   */s/ Peter F. Lacny*
                Peter Lacny
                Attorney for Nathan Nephi Zito